SCOTT L. ADKINS, Esq.
California Bar No. 194809
4114 Northlake Blvd.
Palm Beach Gardens, FL 33410
(561) 866.9305 (telephone)
(561) 693.4116 (facsimile)

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

RONALD GENGLER and CYNTHIA GENGLER,

    Plaintiffs,

vs.

NATIONSTAR MORTGAGE, LLC
And, AURORA BANK, FSB,

    Defendants.

Case No.: EDCV12-01936 TJH (SPx)

COMPLAINT

JURY TRIAL DEMANDED

## COMPLAINT

NOW COME Plaintiffs Ronald and Cynthia Gengler and bring this Complaint, seeking relief based upon, among other things, the Defendants' lack of standing to foreclose and upon Defendants' violations of various provisions of California and federal law.

## BACKGROUND

1. Federal subject-matter jurisdiction exists here under both 28 U.S.C. § 1332(a), because the Plaintiffs are California residents, and both defendants are organized under states' laws other than California, and the amount at issue exceeds $75,000, exclusive of interest and costs. This court also possesses

- 1 -
COMPLAINT FOR WRONGFUL FORECLOSURE.

subject-matter jurisdiction under 28 U.S.C. § 1331 because the allegations raise a question of law under the Truth-In-Lending Act ("TILA").

2. Defendants Ronald and Cynthia Gengler live in the house, which is their primary residence, that is the subject of non-judicial foreclosure proceeding that Defendants Nationstar Mortgage, LLC ("Nationstar") and Aurora Bank, FSB wrongfully instituted and wrongfully continue to pursue. Nor, at this juncture, is it clear who actually owns the Genglers' mortgage. That is so because, first, the Deed of Trust Assignment was executed by a known "robo-signer," and the alleged current owner, Aurora Bank, FSB's status is unclear—that is, Business Wire reported on June 29, 2012, that Defendant Nationstar had acquired Aurora Bank's assets (Exhibit A). But according to that press release, what Nationstar acquired was the servicing right from Aurora's wholly-owned subsidiary, Aurora Loan Services, LLC.

3. The Genglers' primary residence is located in Riverside County, California and is located at 83673 Himilaya Drive, Indio, California ("Indio Property").

4. The Indio Property's legal description is: Lot 119 In Tract 32304, In the City of Indio, County of Riverside, State of California, As Per Map Recorded in Book 407, Page 31 Through 45 Inclusive, Official Records of Said County.

5. On or about October 27, 2006, the Genglers borrowed $365,068 to purchase the Property. In conjunction with this loan, the Genglers executed a Deed of Trust to the original lender, First Mangus Financial ("First Mangus").

6. Then, on or about August 16, 2011, the Mortgage Electronic Registration Systems, Inc. ("MERS"), purporting to act as "nominee" for First Mangus, executed a Corporate Assignment of Deed of Trust ("Assignment") in favor of Aurora Bank, FSB, and that is where the problems and law-breaking began.

7. That is so because, among other reasons, Ms. Regina Lashley purportedly executed the assignment for MERS to Aurora, and one Irene Guerrero purportedly notarized the Assignment. *See* Exhibit B (Assignment).

8. But both Ms. Lashley and Ms. Guerrero have been identified as "robo signers."

9. According to the Assignment's notarization, Ms. Guerrero is a Nebraska notary. MERS, however, is a Delaware Corporation, with its principal place of business in Michigan. Yet Defendants would have the Plaintiffs, and presumably, the Court believe that Lashley, a MERS Vice-President in Michigan, personally appeared before Guerrero, a notary in Scottsbluff, Nebraska, to execute the Assignment. That seems highly unlikely.

COMPLAINT FOR WRONGFUL FORECLOSURE.

10. Upon information and belief, Plaintiffs allege that, in fact, Lashely did not personally appear before Guerrero on August 16, 2011, as the Assignment says.

11. Rather, upon information and belief, Plaintiffs allege that the Assignment is a fraud for one or more of the following reasons: (a) Lashley did not appear before Guerrero when Lashley purportedly executed the Assignment, and thus, Guerrero's notarization was intentionally false when made; (b) Guerrero forged Lashley's signature; (c) Lashley forged Guerrero's signature; or (d) some unknown persons did some combination of the above.

12. In any event, the precise facts about what happened and about whether Lashley and Guerrero were in fact in the same place on August 16, 2011, are matters that lie particularly within the knowledge of Lashley; Guerrero; MERS; and Aurora. Consequently, the particularity pleading requirements for fraud are relaxed.

13. Plaintiffs will amend to add more specificity upon completing discovery against these non-parties.

14. The problem with Guerrero's notarization is that, if fraudulent as Plaintiffs suspect, the Assignment is invalid. An invalid assignment means that the putative Trustee lacked legal standing to commence foreclosure proceedings. It also means that the current alleged owner of the mortgage did not take pursuant to a valid assignment, if any assignment at all was done.

- 4 -
COMPLAINT FOR WRONGFUL FORECLOSURE.

15. Further, the scope of Lashley's agency stands unclear, as does the scope of MERS's authority as a "nominee."

16. Moreover, actual ownership of the mortgage or Deed of Trust stands in serious question. That is so for two reasons

17. The purported Assignment from First Mangus to Aurora Bank was recorded on September 16, 2011. Then on October 3, 2011, putative trustee, Quality Loan Service Corporation, sent a Debt Validation Notice "DVN") to Plaintiffs. According to the DVN, "[t]he debt/loan is currently owed to: Aurora Bank, FSB." But, Business Wire reported on June 29, 2012 that Nationstar had acquired from Aurora, a subsidiary of now-defunct Lehman Brothers, Aurora's assets, (Exhibit A), or more precisely, servicing rights. This makes sense because Plaintiffs' pre-suite investigation indicates that Aurora Loan Servics, LLC acted as the master servicers for Lehman XS Trust, Series 2006-18N, which appears to be the putative owner of the mortgage. But that too stands in question.

18. On October 5, 2011, the putative trustee, non-party Quality Loan Service Corporation recorded in Riverside County's public records a purported Notice of Default ("NOD").

19. On or about June 12, 2012, however, the Genglers received a letter from Aurora Bank, saying that the right to collect payments was transferred to Defendant Nationstar.

20. But, contrary to 15 U.S.C. § 1641(g), the Genglers did not receive a letter within 30 days of the purported assignment from First Mangus to Aurora, which violated the Truth-in-Lending Act.

21. Further, a check of Freddie Mac's database indicates that Freddie Mac owns the Genglers' mortgage. Yet nothing so indicates in Riverside County's public records. So, between Freddie Mac's records and Nationstar's acquiring Aurora's assets, ownership of the Genglers' mortgage stands in serious question.

22. Further, Plaintiffs' pre-suit investigation reveals the Genglers' mortgage became part of a mortgage-backed security, packaged-up as Lehman XS Trust, Series 2006-18N. The following appears to be what happened: The Genglers' obtained a mortgage from First Mangus on October 27, 2006. At some point thereafter, and Plaintiffs do not know when because no recorded assignment exists to show when, the Genglers' mortgage was transferred or assigned to Freddie Mac and/or to Lehman XS Trust, Series 2006-18N. Again, no recorded assignment exists to show when such assignment or transfer occurred.

23. Further, according to Lehman XS Trust documents, the Trust exists under New York law and closed on November 30, 2006 and the cut-off date for taking in new assets was November 1, 2006, just five days after the Genglers made their mortgage to First Mangus. This is important because, under New York law, a trust

cannot take assignment of assets after the cut-off or closure date. That means any assignment to the Trust, which has not been recorded, likely would be invalid.

24. For these reasons, the putative assignments were invalid, and Defendant Nationstar had neither the legal right to foreclose on nor to sell the Genglers' property.

25. Also, for these reasons, ownership of the Genglers' mortgage stands in question, as does the propriety of the foreclosure and Trustee sale that occurred on August 30, 2012.

## COUNT I:

## WRONGFUL FORECLOSURE

26. Plaintiffs here reincorporate by reference the allegations made in paragraphs one through twenty-five, as if fully re-alleged here.

27. The Defendants wrongfully foreclosed for the following reasons:

    a. Defendants lacked the legal standing to foreclose because the purported assignment was not duly executed; consequently, the Assignment from First Mangus to Aurora might be invalid, and thus, Aurora could not assign any rights to Nationstar; and

    b. Defendants lacked legal standing to foreclose as it appears that neither Aurora nor Nationstar validly owns the Genglers' mortgage, assuming the truth of the

allegations regarding an assignment or transfer to either the Lehman trust or to Freddie Mac.

**COUNT II: UNFAIR BUSNESS PRACTICES UNDER BUSINESS AND PROFFESIONS CODE SECTION §17200**

28. Plaintiffs here incorporate by reference the allegations made in paragraphs one through twenty-five, as if fully re-alleged here.

29. Defendants' actions clearly demonstrate unfair business practices. As used in section §17200, unfair competition means and includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code § 17200.

30. Here, the Deed of Trust assignment appears to have been executed by known "robo-signers."

31. Plaintiffs believe that this is a policy, pattern, and practice of Defendants given the number of assignments that were likely executed by the "robo-signers."

32. Upon information and belief, Nationstar and Aurora demanded payment with no legal right to do so. The debt, if owed at all, is owed to some certificate holder for the securitization process.

33. Nationstar foreclosed with no legal right to do so.

34. Both Defendants have tried to cover-up and conceal the fact that, apparently, neither actually owned, owns, or could own

the Genglers' mortgage, in the light of the securitization discovered by Plaintiffs.

35. Defendants have invoked California's foreclosure statutes in what appears to be an act of civil theft.

### COUNT III: VIOLATION OF TRUTH-IN-LENDING ACT 15 U.S.C. § 1641(g)—FAILURE TO PROVIDE TIME NOTICE OF NEW CREDITOR

36. Plaintiffs here incorporate by reference the allegations made in paragraphs one through twenty-five, as if fully here re-alleged.

37. Section 1641(g) of the Truth-In-Lending Act ("TILA") required that Aurora Bank inform the Genglers that a purported assignment was made. TILA required that Aurora Bank do so within 30 days of the assignment's being executed.

38. But Aurora Bank did not.

39. Aurora Bank's violating TILA has caused the Genglers monetary damages.

40. Aurora Bank's violating TILA subjects Aurora to statutory damages and attorney's fees under TILA.

### COUNT IV—DECLATORY JUDGMENT

41. Plaintiffs here re-allege and incorporate by reference allegations in paragraphs one through twenty-seven.

42. Plaintiffs seek a declaration of the rights and obligations of the parties, and specifically, whether either Defendant ever legally acquired the Deed of Trust.

WHEREFORE: Plaintiffs demand a trial by jury on all issues so triable. Plaintiffs also demand compensatory and punitive damages. Plaintiffs demand that Defendants disgorge the monies Defendants have unlawfully collected from Plaintiffs. Plaintiffs further demand statutory damages and attorney's fees under TILA, and Plaintiffs seek a declaration that the Trustee sale of Plaintiffs' home was unlawful because, as alleged here, the defendants did not own the mortgage or possess a validly assigned Deed of Trust.

DATED: December 5, 2012

_____
SCOTT L. ADKINS, Esq.
California Bar No. 194809
4114 Northlake Blvd.
Palm Beach Gardens, FL 33410
(561) 866.9305 (phone)
(561) 693.4116 (fax)